UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALISON SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-953-G |
| | ) |
| THE STANDARD INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now before the Court is Plaintiff Alison Smith's request for judicial review of the decision made by Defendant, The Standard Insurance Company, terminating her long-term disability ("LTD") benefits under its employee-benefit plan. Plaintiff brings this action pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132(a)(1)(B). The administrative record (Doc. No. 18, hereinafter "R. __") has been filed, and the matter is fully briefed and at issue.

BACKGROUND

Plaintiff was employed by Communication Federal Credit Union ("CFCU") as a Loan Officer, where she was enrolled for LTD benefits per the CFCU Group Long Term Disability Insurance Policy No. 150713-B (the "Group Policy"). R. 398-429.[1] Defendant is the claim administrator of the Group Policy. Def.'s Br. (Doc. No. 29) at 6.

---

[1] For citations to the administrative record, the Court uses the final three digits of the Bates-stamp number that appears on each page. For all other filings, the Court uses the CM/ECF pagination.

Pursuant to the Group Policy, Plaintiff was "Disabled," and thus eligible for LTD benefits, if she met either of two definitions. Under the "Own Occupation" definition of disability, operative during the first 24 months for which LTD benefits are paid (the "Own Occupation" period), Plaintiff was entitled to LTD benefits if she was unable to perform the duties of her "own" occupation as a Commercial Loan Officer. R. 406, 411-12. After that 24-month period expired, Plaintiff was subject to the "Any Occupation" definition of disability (the "Any Occupation" period), during which she was entitled to LTD benefits only if she was "Disabled from all occupations." R. 406, 412; *see also* R. 205.

Plaintiff claimed disability due to diabetic peripheral neuropathy, and her last day to work at CFCU was February 15, 2013. R. 3, 206. In September 2014, she submitted a claim for LTD benefits under the Group Policy. R. 295-98. On December 19, 2014, Defendant informed Plaintiff that her claim had been denied but that she had the right to request review and to submit additional information. R. 181-87. Plaintiff did request such review, R. 268, 271, and on September 3, 2015, Defendant informed Plaintiff that she was approved for LTD benefits from April 17, 2013, through April 16, 2015 (i.e., the "Own Occupation" period). R. 234-37. Defendant further informed Plaintiff that it had evaluated her ability to work under the "Any Occupation" definition beginning on April 17, 2015, and determined that Plaintiff was able to perform the sedentary job of Financial-Aid Counselor. R. 237-43. Defendant therefore stated that Plaintiff did not meet the relevant definition of "Disabled" during this later period and that this aspect of her LTD benefits claim would remain closed. R. 241.

Plaintiff filed an internal appeal and submitted additional records for review. R. 35-61, 231. Following a review of these records, Defendant upheld its denial of LTD benefits beyond April 17, 2015. R. 205-13. Plaintiff then filed this action for judicial review.

STANDARD OF REVIEW

The parties here agree that the Group Policy gave its administrator the discretion to determine Plaintiff's eligibility for LTD benefits. *See* Pl.'s Br. (Doc. No. 28) at 3; Def.'s Br. at 5, 21. When an ERISA-governed plan gives an administrator discretionary authority to determine eligibility for benefits, a court reviews a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) for abuse of discretion, using a deferential "arbitrary and capricious" standard of review. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Brown v. Liberty Life Assurance Co. of Boston*, No. CIV-14-519-HE, 2015 WL 3651542, at *1 & n.2 (W.D. Okla. June 11, 2015) (citing *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010)).

The court's review under the arbitrary and capricious standard "is limited [and asks] only whether the interpretation of the plan was reasonable and made in good faith." *Brown*, 2015 WL 3651542 at *1 (internal quotation marks omitted). "We will uphold an administrator's decision unless it is not grounded on *any* reasonable basis." *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345,1357 (citation and internal quotation marks omitted). A denial of benefits may be arbitrary and capricious if the decision reflects a "lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Id.* (citation and internal quotation marks omitted). "In reviewing a plan administrator's decision under the arbitrary and capricious standard," the court is generally

3

"limited to the administrative record." *Murphy*, 619 F.3d at 1157 (citation and internal quotation marks omitted).

## DISCUSSION

Plaintiff contends that Defendant's denial of LTD benefits beyond the 24-month "Own Occupation" period was arbitrary and capricious for several reasons. *See* Pl.'s Br. at 4-29. Reviewing each contention in turn, the Court disagrees.

First, Plaintiff argues that the Court should find the determination "suspect" because the Social Security Administration ("SSA") found Plaintiff disabled as of February 2013 using "the same evidence" and an essentially "identical" standard. *Id.* at 5; *see also id.* at 20-22; R. 345-51. As an initial matter, the SSA's determination could not have rested upon "the same evidence," as many of the medical records reviewed by Defendant were not generated until *after* the SSA's disability decision was issued in April 2015. *See* R. 19-21. Further, the specific basis for the SSA's finding is not clear from the record. *See* R. 345-51. And more to the point, "[t]he determination of disability under the Social Security regime cannot be equated with the determination of disability under the ERISA regime." *Meraou v. Williams Co. Long Term Disability Plan*, 221 F. App'x 696, 706 (10th Cir. 2007) (citation and internal quotation marks omitted); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (discussing the "critical differences" between the SSA disability program and ERISA benefits plans). Indeed, the Tenth Circuit has rejected the proposition that "past and continued receipt of Social Security disability benefits" requires an ERISA plan administrator to continue to pay benefits under the plan "despite

its finding that [the insured] had failed to establish her entitlement to such continued benefits under the [plan's] requirements." *Meraou*, 221 F. App'x at 706.

Next, Plaintiff argues that Defendant's denial of LTD benefits is based on "one thing and one thing only": the conflict of interest faced by the plan administrator in reviewing her claim. Pl.'s Br. at 5-6. Plaintiff is correct that an inherent conflict of interest exists where, as here, "the entity that administers the plan . . . both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Glenn*, 554 U.S. at 108. In such event, the reviewing court should consider the conflict of interest "as a factor in determining whether the plan administrator has abused its discretion in denying benefits," but the significance of this factor "will depend upon the circumstances of the particular case." *Id.*; *see also id.* at 111. "[A] conflict of interest affects the outcome at the margin, when [the court] waver[s] between affirmance and reversal." *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009). "A conflict is more important when 'circumstances suggest a higher likelihood that it affected the benefits decision,' but less so when the conflicted party 'has taken active steps to reduce potential bias and to promote accuracy.'" *Id.* at 1155 (quoting *Glenn*, 554 U.S. at 117); *accord Graham*, 589 F.3d at 1358 ("The importance we attach to the existence of a conflict of interest is proportionate to the likelihood that the conflict affected the benefits decision.").

Here, the importance of this acknowledged conflict is diminished because the record reflects that Defendant did take "active steps to reduce potential bias and promote accuracy." *Glenn*, 554 U.S. at 117. For example, in addition to conducting its own review, Defendant hired three independent physicians to conduct a peer review of Plaintiff's

5

records. R. 17-23, 62-65, 92-94. Defendant also requested job descriptions, conducted interviews, and consulted with vocational experts in an effort to correctly characterize Plaintiff's own occupation and potential alternative occupations. *See, e.g.*, R. 288, 299-319, 322, 325-28, 330, 338-41. And Defendant invited Plaintiff to submit new information for consideration during her internal appeals. R. 187, 226-27. Because Defendant took "active steps" to reduce the presence of bias, the inherent conflict noted by Plaintiff is in this instance "of minimal importance" to the Court's analysis. *Glenn*, 554 U.S. at 117; *Foster v. PPG Indus.*, 693 F.3d 1226, 1232 (10th Cir. 2012).[2]

Contrary to Plaintiff's suggestion, the record does not reflect that Defendant ignored evidence favorable to Plaintiff or otherwise acted in an arbitrary and capricious manner. For example, Plaintiff challenges the consideration of the evidence produced by one of her treating physicians, Travis Kanaly, MD, and implies that Dr. Kanaly's opinions should be accepted based solely upon their treatment relationship. *See* Pl.'s Br. at 12, 14-17. But Plaintiff again conflates the rules governing disability under ERISA and those governing

---

[2] Plaintiff also offers a lengthy tirade against "hired gun" Hubert Leonard, MD, one of the independent physician reviewers, and against insurance companies and drug companies generally, based upon her own unsupported conclusions regarding claims reviewers' sources of income and unrelated litigation. Pl.'s Br. at 6-13, 16. Plaintiff then requests that she be permitted to conduct extrarecord discovery regarding Defendant's conflict of interest, various personnel involved with the claim, and "how much [Plaintiff's] denials cost." Pl.'s Br. at 25; *see id.* at 23-29. Defendant objects that Plaintiff's request is untimely and unfounded, *see* Def.'s Br. at 31-34, and the Court agrees. On May 23, 2017, the Court entered an Order directing Plaintiff to file any motion to conduct discovery by July 1, 2017. *See* Order (Doc. No. 16) at 1. Plaintiff never filed any such motion, and her Brief offers no justification for the tardiness of the request. Further, Plaintiff's conjectural assertions fail to show that the benefit of allowing discovery now would outweigh its "burdens and costs" or that such discovery would amount to more than "an unwieldy, burdensome, and speculative fishing expedition." *Murphy*, 619 F.3d at 1163 (citing Fed. R. Civ. P. 26(b)).

disability under the Social Security regime. The "treating-physician rule" seen in SSA disability review is inapplicable in the ERISA context. *See Nord*, 538 U.S. at 834 ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

In addition, the presence of evidence that "would have supported a determination in [Plaintiff's] favor" does not, standing alone, show that the Defendant "simply ignored the conflicting evidence." *Brown*, 2015 WL 3651542 at *3. In September 2014, Dr. Kanaly diagnosed Plaintiff with diabetic peripheral neuropathy and opined that Plaintiff would "never" be able to perform her usual work again. R. 71. After Defendant requested and received additional records from Dr. Kanaly (R. 99-104), Defendant obtained a review by independent physician consultant Janette Green, MD. Dr. Green specifically discussed Dr. Kanaly's records in her written report. *See* R. 93. Plaintiff also submitted a December 2014 residual functional capacity assessment, in which Dr. Kanaly had stated that Plaintiff was unable to climb, balance, or perform fingering or feeling tasks and needed to use an assistive device. R. 73, 74. Defendant's second independent physician reviewer, Stephen Hopf, MD, considered this record, as well as Dr. Kanaly's previous records, in evaluating Plaintiff's claim. R. 63, 64. And when, in March 2016, Plaintiff submitted additional records from Dr. Kanaly (R. 57-61), Defendant's third independent physician reviewer—Dr. Leonard—specifically addressed these records and Dr. Kanaly's other opinions in his written report. R. 17, 18-19, 21, 22; *see* R. 22 (Dr. Leonard finding that Dr. Kanaly's

opinions on fingering and fingering were not supported and that Plaintiff had no specific limitations regarding fingering, fine manipulation, or keyboarding).

Thus, "[t]he record does not support [Plaintiff's] suggestion that [Defendant] simply ignored the conflicting evidence. Obviously, [Defendant] reached conclusions unfavorable to [Plaintiff's] position, but there is ample indication that [Defendant's] reviewing physicians considered the opinions of others," including Dr. Kanaly. *Brown*, 2015 WL 3651542 at *3. *See also Chen v. CenturyLink*, No. 15-cv-01651-MSK-KMT, 2017 WL 2199008, at *9 (D. Colo. May 18, 2017) ("[W]here there is conflicting evidence, the plan administrator's reliance on some evidence and rejection of other evidence does not make the decision arbitrary or capricious.").

Finally, Plaintiff claims that Defendant improperly analyzed Plaintiff's vocational capabilities. Specifically, Plaintiff argues that the vocational case manager ("VCM"), who found that Plaintiff was able to perform the occupation of Financial-Aid Counselor during the "Any Occupation" period, erred in several respects. *See* Pl.'s Br. at 18-23. In his report, the VCM described the Financial-Aid Counselor job as sedentary in nature, requiring occasional fingering and "sitting most of the time," though maybe "involv[ing] walking or standing for brief periods of time." R. 303, 306 (citing *Dictionary of Occupational Titles* ("DOT") (4th rev. ed. 1991) 169.267-018 (Financial-Aid Counselor)). First, Plaintiff claims that the DOT "says sit 6 hours, stand and walk two (2) hours" per day for this occupation and objects that the VCM failed to delineate between the time that Plaintiff would need to spend walking and the time she would have to stand each day. Pl.'s Br. at 18. But contrary to Plaintiff's representation, the job listing in the DOT does not set

forth any such two-hour requirement. *See* DOT 169.267-018, 1991 WL 647448. In addition, Plaintiff fails to offer any reasoned explanation as to why the lack of a stand/walk distinction undermines the VCM's finding.

Second, Plaintiff argues that it is a "cruel joke" for the DOT to prescribe that the Financial-Aid Counselor occupation requires only occasional fingering. Pl.'s Br. at 19. But Plaintiff's only support for this proposition is: (1) "[i]t is common sense not requiring any expertise"; (2) in banking—a different industry[3]—"[l]iterally, *everyone*, is on a computer almost all day"; and (3) another VCM had opined that Plaintiff's "own occupation" of Loan Officer—a different occupation in a different industry—would require frequent fingering, rather than the occasional fingering contemplated by the DOT. Pl.'s Br. at 19. These speculative assertions do not establish that the VCM assigned to Plaintiff's case erred in relying upon the DOT definition for Financial-Aid Counselor; nor does it show any unreasonableness in the final determination of Plaintiff's ability to perform that occupation.

And third, Plaintiff argues that the Financial-Aid Counselor occupation would require "too much vocational adjustment" given Plaintiff's age and background and that the VCM did not adequately address this issue. Pl.'s Br. at 20-22. But the VCM thoroughly considered Plaintiff's vocational background and functional capacity, addressing: the report completed by one of Defendant's independent physician consultants; Plaintiff's

---

[3] Plaintiff characterizes the Financial-Aid Counselor job as processing loans to students on behalf of a bank, which is inconsistent with the DOT's definition. *Compare* Pl.'s Br. at 18-19, *with* DOT 169.267-018, 1991 WL 647448.

9

education, training, and experience; her transferable skills; and the wages and labor market associated with the Financial-Aid Counselor occupation. R. 299-307. Plaintiff's contention of error, based upon authority relevant to SSA disability review and what vocational experts in all areas supposedly "all know," is not persuasive. Pl.'s Br. at 22; *see Brown*, 2015 WL 3651542 at *4.

## CONCLUSION

As set forth above, there is substantial evidence supporting Defendant's determination, and the Court cannot conclude that Defendant abused its discretion in denying Plaintiff's claim for LTD benefits beyond the initial 24-month period. The Group Policy's administrator's decision is AFFIRMED.

IT IS SO ORDERED this 16th day of November, 2018.

CHARLES B. GOODWIN
United States District Judge